Please call the next case. 311-488 and Title II, Walmart Associates v. Dan and Mike. Counsel may proceed. May I please the Court, Counsel, Names Attorney James McFedrin of Recruiting Associates in the Court of Appeals? Yes. And may I please the Court, Counsel, Names Attorney James McFedrin of Recruiting Associates   And may I please The condition which came to the forefront as was testified to by, unrefuted, by Dr. DeFillips. This brain strain can have spasm, can have, cause symptoms, can cause problems, but it masks the segmental instability. The pre-existing condition of the spondylosis, spondylolisthesis that was aggravated in the accident didn't come to the forefront until later. And that was what was involved in the permanency hearing. And there was evidence in the record of the change and worsening of the condition, not only from the petitioner, who I wasn't involved in the early trial, but I was involved in all of the later one. And wasn't relying just on the petitioner's credibility, because obviously that alone had been called into question in the earlier hearing. Although, when there was corroboration in the earlier hearing, such as on accident and things like that, he was believed. In this case, there was a change in worsening of the condition between October and December. Testified to by an officer, the Court was found to be credible by the commission at the second time around. Well, as a matter of fact, when the surgery was performed in January, didn't the surgeon discover free-floating lamina that couldn't have been otherwise discovered? Correct. And that explained the worsening symptoms? Absolutely. Free-floating lamina, a program that was done afterwards that was positive, all kinds of things. And this was definitely a different condition that was considered by Arbitrator Genano in the first one. And we come back to, they don't talk about Thomas on the respondent side either. The suggestion of a resolved sprain-strain to the extent that, and they have argued that in this case, without discussing Thomas or saying how they get around it. That's a void finding if it's intended to be a permanency finding. Thomas says you can't make a permanency finding in a 19B. That was dealing also, if you really look at the context of it, with only the point of that credibility. The judge was really saying, look, you're causally related, you proved your accident, but if you're on that jet ski, at least for right now, and he was careful, he says present condition of ill-being. That doesn't justify further TTD. Present. But that changed later on, as shown by the evidence, and it's unrefuted that it changed. They don't have counter-witnesses, they don't have the RD masonry that they could have gotten. Justice Hoffman wrote that appellate decision, and although that was focused more on the Council of Tufu issue, the Supreme Court, though, cited with approval the National Wrecking Company. That came down after the appellate court decision in RD masonry. I make mention of that because the Supreme Court in RD masonry, even though it wasn't dealing with this specific issue, also agreed with what you're saying, Justice Hudson, that every later hearing involves different legal and factual issues. Now, granted, you've got to look at the facts and see that it's not a help-at-home situation. But it's a help-at-home situation because there was an appellate decision, Justice Huffman, where they were trying to recreate the same ‑‑ they were trying to redo causation on the same condition without indication of change. That's not what happened here. That isn't what happened here. You were involved in that decision, too. And, pardon? But if I have the names right, I tried to figure out who all of you were in advance because I know Justice Holdridge. I've seen him, had the privilege of arguing for him numerous times before the appellate court in the Third District. The rest of you, I don't get into this particular appellate level all that often. I think the last time was 2009, and I can't remember people's faces from that long ago, and I'm sure you don't remember me, either. But, well, Justice Holdridge probably does. But getting back to it, yes, it is definitely different facts and circumstances, a different scenario, and the record is overwhelming in support of the proven perm total for this petitioner. And the trial court went in and basically made his own judgment and reversed the commission decision that was well reasoned, that I suggest. But he also changed some of his rationale between the original hearing and the reconsideration hearing, and he refused to recognize any significance of the language. He said it's just boilerplate, doesn't mean anything what Justice Hudson says as far as right to later hearing further TTV. But the decision said you have a right to do that, so that's an indication of the intention, that it was only dealing with the present condition of well-being. And I also come back to another point that they never recognized, that that original arbitrator awarded the bills and found them to be causally related for even the period of time subsequent to this Jetski thing. He awarded the bills. The commission took them away, but he awarded the bills. So their suggestion that he was doing, you know, he, they did not, the arbitrator did not. And the commission, when it took them away, was careful in suggesting it was unreasonableness and necessity based on his credibility, again, going back to the Jetski incident on that time frame. And that's not the later condition and the later time frame, which has been proven up by this overwhelming record that we have here. With surgery findings that are irrefuted, the free-floating laminate, as Justice Stewart indicated, the discogram, a second opinion indicating that surgery was needed, the extensive physical therapy that happened afterward, the self-directed voc rehab without the assistance of the respondent. He wanted to try and go back to there when he was released to light duty for a period of time, and then the commission regressed. In fact, developed retralisthesis at the level above the fusion. He developed it at L4-5. The fusion was at L5-S1. Then the treating doctor opined that he was permanently and totally disabled. And so after two years of the self-directed, he did stop the job search then, but he then was determined medically disabled. And he'd also made a good faith search before then. So in that, I think we're on the manifest way, too. Standard of review on the law of the case. Granted, it can be a question of law. It was determined to help at home. But it also, certainly when you get past that, it's all manifest way. And I think it also can be argued that when you're dealing with these facts and interpretation of the facts as to the law, as I pointed out in my brief, and this hasn't really been specifically addressed by this Court that I could find in other cases accepting help at home where it was found to be a question of law. But there it was clear. They were only trying to relitigate the same condition for the same thing. There wasn't a change in the factual scenario. Here, you do have that. Counsel, your time is up. You'll have time to reply. Thank you. Counsel, you may proceed. May it please the Court, Mark Maturanga for Wal-Mart.  The arbitrator heard this case on a 19B decision. He issued a decision. I'm going to call it the 19B decision. What did the 19B decision decide? Counsel is giving us not much guidance on that. He claims, if I understand the argument correctly, it just decided the period of TTD. And in addition to that, it could not have decided this man's condition that resulted in the surgery, I believe, December, January. Is that what it decided? Well, who makes that determination? Doesn't the commission make that determination? The arbitrator and the commission in the 19B decision, that's what I'm referring to, Your Honor. I understand. The 19B decision, that's a commission decision, decided that the spondylolisis and spondylolisthesis, which was known prior to the conclusion of the 19B proceedings, that that was not causally related to the accidents. By the way, everyone knew it. There's a Leonard Cohen song there somewhere. Everybody knew. When Dr. DePhillips testified in the next proceeding, he said the commission should reconsider the causation issue. He knew what had been decided. Well, getting back to the law of the case, what do you make of the commission's order that states, quote, What do you make as to the import and meaning of that language? Here's what import I give it, Your Honor. If any. Well, you have to give it some because the commission stated it. If any. If there is any. There was none attributable to the work-related condition, which was the sprain and strain. This is something about which there is no argument. This gentleman has not worked. He had surgery. He didn't go back to work. It all relates to the spondylolisthesis, spondylolisthesis, which was the subject of the surgery, not the sprain and strain, which the arbitrator and the commission found to be work-related conditions. They found the spondylolisthesis and spondylolisthesis not to be work-related conditions. Therefore, if this gentleman had more medical treatment for a sprain and strain, if he had had more lost time for a sprain and strain, yes, if any. This is boilerplate, by the way, Your Honor. Boilerplate language in all 19B decisions. And this particular case had to go back to the arbitrator, by the way, because we needed to determine what the man's permanent disability would have been from the sprain and strain. So this is just stating the obvious that there must be further proceedings will determine what he has coming, if any. It doesn't mandate a reconsideration of the causation issue, which was final. Final. So why was it remanded, then? What was it remanded for? For further proceedings on any permanency or any TTD. Any. If any. Did it get to that point when the circuit court intervened and said, hey, you're out on the law of the case? I'm sorry, Your Honor. What did the circuit court say? How did this case procedurally get here? Well, there was a second proceeding, which, by the way, my client was objecting all the way to any further proceedings under Section 19B or any proceedings having to do with the spondylolisthesis. There was a further proceeding, and then what happened? Well, he was found to be totally disabled as a result of the spondylolisthesis. And then what happened? He went to the circuit court, and the circuit court... So that should have never happened. Law of the case, right? What are you confused about? Isn't that what the circuit court held? The law of the case precluded that? Precluded an inquiry into any permanent disability for the non-work-related condition. Again, Your Honor, Dr. DePhillips gives it up for us. They should reconsider their causation decision. Now, we need to understand something, all of us, and that is this. This was not an occult condition. This was not something no one knew about. There were MRI and CT scan studies done in the summer of 2003. The arbitrator had those in front of him. The arbitrator knew there was a spondylolisthesis. What about the free-floating lamina? It was discovered during the surgery, but when the doctor... So they didn't know about that at the time of the original arbitration proceeding? Correct, but that's all part of the spondylolisthesis diagnosis. Did you say it's not an occult condition? The spondylolisthesis was not undiscovered. Occult or acute? No, I said occult, meaning we couldn't find it. The doctor was aware of it. The medical records introduced at the 19B proceeding are replete with references to this man's spondylolisthesis. If you'll permit me, Your Honor, the doctor had discussed surgery with the man in July. This was in front of the arbitrator of the 19B proceedings, if I may. At the July 24, 2003 evaluation, Dr. DePhillips advised petitioner that his only surgical option was a spinal fusion. I've seen the Lincoln movie twice, and I'm very impressed with President Lincoln. He tried to convince his obstinate cabinet that having 300,000-plus people die in a war meant something. It had to count for something. You just can't pretend it didn't happen. Same thing here. We have a decision. Are we to say it counts for nothing? Oh, I was only cut off of T.T.D. because I lied. But now I'm telling the truth, and therefore we should reconsider the causation issue. It wasn't just the T.T. issue. Wasn't that what the original decision was all about, though, the jet ski? Somebody saw him on a jet ski, so they didn't believe that his condition was as bad as he had? Correct, Your Honor, and therefore we conclude, and I will read the decision to you, that he was not credible. Therefore, the arbitrator found that his present condition of well-being, the condition of well-being that disabled him at the time of the 19B proceeding, is not causally connected to the accidents. That's what he found. That condition. You were just saying it wasn't based on credibility. It was based on credibility, wasn't it? In part, perhaps, but at this point, Your Honor, or at the point this decision became final, the rationale didn't matter. It's final. They found him not credible, among other things, perhaps. Sometimes you know these decisions. Unlike the case I argued a little earlier, this decision is not as well written. But if I may, from the decision itself, this is the 19B decision. What did it decide? What did it count for? We're being told that it didn't count for anything. Just cut him off of some TT, and because his situation was evolving, yeah, it was evolving. It's the non-work-related condition that was evolving. That's done. When Your Honor asks about, well, what did this, you know, why did we have the second hearing, and isn't that the law of the case? Again, with all due respect, that's a bit of a non-sequitur. That was a condition that they should not have been considering because it had been found not related. If I may, in July, this is when the doctor talked to the man about your only option is surgery. That's when the test was done. It revealed the spondylolisthesis, spondylolisthesis. The fact that that condition may have worsened over the summer, got worse, then he had the surgery, found the floating piece. Again, the worsening of the condition is not the focus of the legal inquiry. The focus of the inquiry is what did the commission decide? The arbitrator went on to say that the doctor discussed surgical options, and his report, October 2nd, 03, this was in front of the arbitrator at the 19B proceeding, confirms the fact that the spondylolisthesis and spondylolisthesis is the reason for the petitioner's off-work status. Then, when he made the decision on the causation issue, stated as follows, I quote, and I believe this is, to my chagrin, there is a clerical error in my brief. The decision is not there, but it's in 126 to 128A of the appendix counsel file. And I quote, the accidents of September 8th, 02, and June 9, 03 arose out of and in the course of petitioner's employment and petitioner's present condition of well-being as it relates to his accidents, in paren, resolved sprain, strain, having reached MMI related to the June 9, 2003, in paren, is causally related to the injuries sustained on those dates. However, his present condition of well-being as it relates to his ability to work is not causally related to the injuries sustained on those dates. That begs the question. Okay, and you must have made an argument before the arbitrator, I'm assuming, that no evidence should have been considered, right? Correct. You made that argument. Oh, absolutely. And the arbitrator said specifically that under the commission decision, it constituted no bar to further awards of TTD or for permanent disability. Isn't that what the arbitrator said? Correct. But again, because of the law of the case, the commission couldn't consider the causation issue as it related to spondylolisthesis, spondylolisthesis. It could consider the sprain, strain to see if he had more. Counsel, your time is up. Thank you. That's too bad. But I thank you, Your Honor. Mr. McBedren, you may reply. I share your pain in the time being up. You work on a case so long and so hard for so many years, and you get so little time, and that's why then we count on you to review the briefs and the record. And we prepare as well as we can for these proceedings. I take issue with, not surprisingly, with virtually everything he says. First of all, he mischaracterizes, I suggest, the findings even in the earlier 03 decision. Clearly, the arbitrator in 08 did find there was a change in the condition and a worsening of the condition, and I think that's supported clearly by the record in this case. And going back to the 03 decision, you won't find a specific statement in there that as it exists later, is it related. There was a preexisting condition of that. It wasn't in this judge's mind sufficient to justify him being off work. But this finding isn't a causation finding on this period. It's really relating to credibility, as Justice Stewart said. And that goes back to the statement on the page before, the same one he's quoting, which I put in the appendix 127, that his testimony with regard to his inability to work was not credible. That was the crux of it. And it's not a medical one, because if it was a medical one, as they're saying, this arbitrator wouldn't have awarded the bills for the period of time after that, and he did. He awarded the bills through the closing of proofs. And he stated that all the medical treatment, including any that they could arguably attribute to spondylosis was causally related. That's what this arbitrator said. He said it was incurred as a result of the injuries sustained on June 9, 2003. But the crux of the matter is that this condition really manifested itself with corroborating evidence not known at that time, and justice cries out and demands that you trust the word that this guy is entitled to. Maybe there was an argument, as he said and as she said on a jet ski, if I were to try any case, I wouldn't have made a big issue. There's no indication he got hurt then. It shouldn't have been a big argument, even if he denied it. The big point is, what's your condition? But moving forward, it changed anyhow. We have the discogram that now, the symptoms changed, corroborated by an officer of the court. Discogram, extra finding, free-floating lamina, intraoperability, second opinion, and an overwhelming body of records after that. There's no question but that there was a change in worsening. This fits in the parameters of national wrecking company and wire and the language that there was no bar to a later hearing. You've got to totally not give that any meaning to come up with the result they want. And that's what they've argued here, that he really didn't have a right to further TTD or further medical or further permanency or anything. And that's the antithesis of 19-H and 8-A. And the antithesis of Thomas, which says you don't have permanency hearings. The purpose of the 19-B is to deal with the issues at that time. Doesn't it mean anything? Sure it does. Guy can't go back and get TTD for that time period, and he can't get the bills for that time period. But that's what was at issue there. That's not what's at issue now. What's at issue now is the substantial condition of ill-being that this guy is permanently totally disabled, has had surgery, is looking at potential additional surgery that's built up by a substantial record, and it's totally unrefuted. This is an example of someone trying to hang on to a legal technicality to stop justice in the case, just like was tried to do by the petitioner in the Wire case, and just like was tried to do by the respondent in the National Wrecking Company case. And that's why when this Court looks at these cases, it recognizes that workers' comp, unlike other areas of law that look at law of the case, deals with different operative facts, different time periods, and different legal issues involved in connection with the later issues. And that's why we suggest that Arbitrator Andra's decision affirmed by the commission was supported by the record and the later decisions of this Court in Wire for the corroborate that point, and that our petitioner, on behalf of the petitioner, we approved our case, and he's entitled to the award that the commission gave him in 2010, affirming the arbitrator in the lengthy well-reasoned decision. Unless you have any other questions, I'm probably out of time anyhow. No, you don't. Thank you, Mr. McFedrin. Thank you. And I know this got added on today on behalf of both parties. I think we appreciate the fact that you were able to address this case on this cycle rather than having it wait. Thank you, Mr. McFedrin. Thank you, Your Honor. Mr. McFedrin, Mr. Matrango. This matter will be taken under advisement for a dispositional issue. The Court will stand in recess subject to call.